UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER PALMORE,

> Plaintiff,

– *against* –

NAPOLI SHKOLNIK PLLC, PAUL NA-
POLI, MARIE NAPOLI, *and* HUNTER
SHKOLNIK,

> Defendants.

**<u>OPINION & ORDER</u>**

23-cv-1616 (ER)

<u>RAMOS</u>, D.J.:

Heather Palmore filed this action against her former employer, the law firm
Napoli Shkolnik PLLC ("Napoli Shkolnik" or "the Firm") and law firm partners Paul
Napoli, Marie Napoli, and Hunter Shkolnik (the "Individual Defendants").  She brings
federal and state claims for discrimination and retaliation based on race and disability, as
well as for violation of a New York statute prohibiting strategic lawsuits against public
participation (the "anti-SLAPP law").[1]  Doc. 1.  Defendants now move to dismiss the
case for lack of personal jurisdiction, improper venue, and for failure to state a claim
pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6),
respectively; or alternatively, to transfer the case to the Eastern District of New York.
Doc. 47.  For the reasons set forth below, the Defendants' motion to transfer is
GRANTED.

I.      **BACKGROUND**[2]

   **A.  Factual Background**

Palmore, who is African-American, is an attorney who was employed by the
Defendants.  ¶¶ 16, 33, 36.  She resides in Long Island, New York, which is situated

---

[1] The anti-SLAPP law allows defendants to quickly move to dismiss lawsuits filed against them for
exercising their First Amendment rights.  *See Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022);
N.Y. Civ. Rights L. § 70-a.

[2] Unless otherwise noted, citations to "¶_" refer to the Complaint, Doc. 1.

within the Eastern District of New York.  ¶ 16.  Napoli Shkolnik is a professional limited

liability company with its principal place of business in New York, New York, which is

situated within the Southern District of New York.  ¶ 17.  Napoli Shkolnik has a Long

Island office[3] and a New York City office, and Palmore alleges that she worked out of

both locations.  ¶ 16.  Palmore also worked for the Firm remotely, although she does not

specify the location that she worked from.  ¶ 172.  Paul Napoli, Marie Napoli, and Hunter

Shkolnik are principals of the Firm.  ¶¶ 18–20.  They are domiciled in Puerto Rico.  Doc.

48 at 16.

Palmore is an accomplished trial attorney with over two decades of experience.

¶¶ 21–28.  Palmore was introduced to Paul Napoli by the noted civil rights attorney, Ben

Crump.  During their initial meeting—the location of which is not alleged—Paul Napoli

remarked that he had never met an African American female trial attorney and opined that

Palmore looked amazing for her age.  ¶ 31.  Paul Napoli recruited Palmore to join Napoli

Shkolnik from late August 2021 through early September 2021.  ¶ 32.  In particular,

Palmore states that the Firm was going to market her as a "prominent African American

attorney to communities where that would resonate."  ¶ 33.

On October 11, 2021, Palmore officially started at the Firm with the title "Chief

Trial Counsel."  ¶¶ 2, 39.  As of Palmore's hiring, the Firm had no African-American

partners, and only one other African-American attorney.  ¶ 43.  During her tenure at

Napoli Shkolnik, Palmore alleges that she was subjected to numerous instances of racial

discrimination and retaliation.  Early in her tenure, Palmore suggested hiring her former

paralegal, to which Paul Napoli responded with "but he is not black," and ultimately

denied the request.  ¶¶ 45–47.  The location of this interaction is not specified.  On

December 5, 2021, a stuffed bear was hung from a noose on a light fixture in direct view

of her office (although which office location, Long Island or New York City, is not

_____

[3] Long Island is located in the Eastern District of New York.

2

specified).  ¶ 84.  Despite Palmore's complaint to Human Resources, there was no follow up regarding this incident.  ¶¶ 84–88.  However, it appears that the bear was promptly removed.  ¶ 87.

Despite the Firm's promise to market Palmore as a prominent African-American attorney, ¶ 33, her requests for marketing support, including launching marketing efforts towards communities of color in New York City and Long Island, were either rebuffed or ignored by the Individual Defendants.  ¶¶ 51–77.  Around the time she started working for the Firm, Paul Napoli assured her that they would set up a meeting to discuss marketing, but did not follow up.  ¶ 51.  In January 2022, Palmore presented Paul Napoli with an opportunity to sponsor a preeminent intercollegiate African American sorority, which the Firm declined to sponsor.  ¶¶ 61–62.  The location of this presentation is not alleged.   In mid-January, Palmore again followed up with the Firm's marketing staff, although where or how this follow up took place is not alleged. ¶ 63.  In early February 2022, Palmore emailed Marie Napoli, Paul Napoli, and other members of the Firm to suggest marketing strategies to target communities of color.  Marie Napoli responded that she would set up a call to "talk it through," but did not follow up.  ¶ 64.  On February 10, 2022, Palmore emailed the Individual Defendants again to suggest connecting them with a television correspondent that she knew from her personal network.  ¶ 65.  Again, Marie Napoli told Palmore that "someone would circle back," but no follow up occurred.  ¶ 67.  The locations of Palmore or the other members of Firm during these email exchanges is not specified in the complaint.

Shortly thereafter, in mid-February 2022,[4] Palmore traveled to Puerto Rico for a business conference.  ¶ 89.  While there, she met with the Individual Defendants for dinner, during which Paul Napoli introduced Palmore as the "Black female Ben Crump."  ¶ 90.

---

[4] The complaint mistakenly references February 2021, which is before Palmore was hired by Napoli Shkolnik.

On April 2, 2022, Palmore emailed Paul Napoli about a marketing idea regarding a mass tort action involving defective earplugs.  The Firm eventually created a flyer based on this idea, but featured a white male partner instead of Palmore.  ¶¶ 70–72.  On April 15, 2022, Palmore emailed Paul Napoli and other members of the Firm with marketing ideas to communities of color, and the Firm again created a flyer predicated on Palmore's idea, but used an image of white people.  ¶¶ 76–77.

Also in mid-April 2022, Palmore wrote to Marie Napoli offering to use her connections with opposing counsel to assist in settlement negotiations in a particular litigation matter, to which Marie Napoli wrote back that Palmore should "leave the negotiations to [us]."  ¶ 78.  The locations of Palmore or the other members of Firm during these email exchanges is not specified in the complaint.

In early May 2022, Palmore attended a mass torts conference in Puerto Rico, which was attended by other members of the Firm.  ¶ 95.  While at a reception, John Napoli, a partner at the Firm, stated to her "who do you think you are, walking around here like you are an executive at the [F]irm."  *Id.*  At the same reception, Palmore noticed that Paul Napoli and other members of the Firm chose not to sit at her table, and when Palmore proceeded to follow other members of the Firm to a table, Joseph Napoli approached her and told her to "[g]et away . . . go over there."  ¶¶ 96–97.

In June 2022, Paul Napoli asked Palmore to attend a court appearance in a civil rights case, an area of law in which Palmore has substantial experience.  ¶ 99.  The complaint does not allege the location of this court appearance.  Prior to entering the courtroom, Paul Napoli told Palmore—the only woman and person of color in the group of attorneys attending— to "be quiet" and not to "say anything."  ¶¶ 99–100.

Also in June 2022, Palmore suggested to Paul Napoli that the Firm should create a position for chief diversity officer, and volunteered to take on that title.  ¶ 105.  Paul Napoli was unreceptive to the idea.  The location of Napoli and Palmore's interaction is not specified.

In July 2022, Hunter Shkolnik asked Palmore to shoot two commercials for the Firm regarding adult sexual abuse.  ¶ 101.  Palmore agreed, and spent two days shooting the commercials, although the location of the shoot is not specified.  *Id.*  However, the Firm never aired the commercials with Palmore, instead reshooting and airing the same commercial with two paid white actors.  ¶ 102.  In August 2022, Palmore was also excluded from an organization chart distributed by the Firm.  ¶ 108.

In September 2022, Napoli Shkolnik circulated an employee survey.  In response to the employee survey, among other things, an anonymous employee complained that the Firm acquiesced to clients' and attorneys' racist conduct towards minority employees.  ¶ 125.  Palmore was at the Firm's New York City office when she received the results of the survey.  Doc. 56 at 2.  A task force was formed to address the results of the survey, which Palmore joined.  ¶¶ 119, 121, 122.  Before a task force meeting, Palmore learned from a female associate that one of the associate's cases was re-assigned due to a client's request for a male attorney, since, according to the client, "men [were] more aggressive" and would "get the job done."  ¶ 127.  The associate informed Palmore that Marie Napoli minimized the client's request by stating that "it's just business" and that "half [of] our clients are difficult."  ¶¶ 128–129.  Palmore was at the New York office when this conversation took place.  Doc. 56 at 1.

At the task force meeting, which was held in the Firm's Manhattan office on September 22, 2022, Palmore stated that the Firm needed to take diversity, inclusion, and equity issues more seriously, and that there must be a clear stance against discrimination.  ¶¶ 125, 133; Doc. 56 at 1.  In response to Palmore's comment, the head of Human Resources, Gloria Werle, stated that as a Hispanic woman she had never experienced discrimination at the Firm.  ¶¶ 93, 134.

On September 24, 2022, Palmore sent an email to senior Firm management including Paul Napoli, Marie Napoli, and Shkolnik.  ¶ 137.  In her email, Palmore discussed the female associate's reassignment and the task force meeting, and raised

concerns that the Firm needed to do a better job responding to diversity issues.  In response, Paul Napoli called Palmore later that day.  ¶ 139.  Paul Napoli started the call by yelling "what are you doing?  Now I have to call my [insurance] broker."  *Id.*  He continued to yell at Palmore, claiming that Napoli Shkolnik was his law firm and that he could run it however he wanted to.  *Id.*  Mr. Napoli ended the call by blaming Palmore for "ruining [his] dinner plans."  *Id.*  Palmore and Pail Napoli's locations during this exchange are not specified.

On September 26, 2022, Palmore received an email from Human Resources requesting more information regarding each instance of discrimination she had observed at the Firm, and was also informed that an outside investigator, an attorney from the law firm L'Abbate, Balkan, Colavita & Contini, LLP, would be conducting an independent investigation.  ¶¶ 141–42.  The outside investigator interviewed Palmore as well as "fewer than five employees," before ultimately finding that that the Firm had not engaged in any discriminatory conduct.  ¶¶ 143–145.  Palmore's location when she received the email from Human Resources, as well as where the outsider investigator interviewed Palmore and other employees, is not specified.

On September 29, 2022, Paul Napoli called Palmore again, although the complaint does not explain where Palmore or Paul Napoli were while this conversation took place.  Paul Napoli began to yell at her for raising complaints because he had to spend "$50,000 for [the] investigation" and claimed "Palmore did not care."  ¶ 148.

During the fall of 2022, Palmore notes that after complaining about discrimination at the Firm, she was "made to essentially 'beg' to try a case" and was ignored in meetings.  ¶ 157–159.  No physical location is specified for these events.

On October 19, 2022, Palmore attended a meeting with Paul Napoli and Shkolnik over Microsoft Teams and was informed—for the first time—that there were problems with her work.  ¶¶ 164–65.  Palmore was also told that her salary would be reduced.  ¶167.  Also during this meeting, Palmore was admonished for taking an aggressive tone,

which Palmore construed as a comment on her gender.  ¶ 168.  The complaint does not allege where Palmore was while this meeting took place.  That evening, Palmore's counsel sent a letter to the Firm advising that Palmore intended to pursue discrimination claims.  ¶ 170.  The next day, October 20, 2022, Palmore lost remote access to the Firm's network, which she did not regain until January 2023.  ¶¶ 172, 276.[5]  As a result, Palmore was forced to work in the office while she had a severe upper respiratory infection.  ¶ 173.  The complaint does not explain whether Palmore worked out of the New York City or Long Island location during this time period.

On October 22, Paul Napoli circulated an email to the entire Firm reminding employees that forwarding law firm emails or information to personal emails was a violation of the Firm's policy, and that failure to inform the Firm of such conduct could result in "adverse employment action."  ¶ 174.  Palmore interpreted this email as an effort to prevent her from engaging in protected activity.  *Id.*  Palmore does not allege where she was when she received this email.

On October 25, 2022, Palmore received an email from Paul Napoli requesting her availability for another meeting.  ¶ 175.  When Palmore informed him that she would be unavailable in order to attend her niece's funeral, he told Palmore that she was avoiding him and that "it's not my job to chase you."  ¶ 177.  During this exchange, Paul Napoli also told Palmore that her claims of discrimination were "spurious" and had been "disposed of."  ¶¶ 180–88.  The complaint does not specify Palmore or Paul Napoli's physical location during the email exchange.  On October 31, 2022, Palmore noticed the Firm changed the caption of her photo on the Firm website from "Chief Trial Counsel" to "Of Counsel/Chief Trial Counsel," which she alleges "ma[de] it clear to the public that she [was] not a Partner."  ¶ 191.

---

[5] The complaint does not say that the loss of her access was intentional on the part of the Firm, but in her response to the motion, Palmore asserts that the Firm cut off her access.  Doc. 54 at 13 ("The next day, Napoli [Shkolnik] shut down Ms. Palmore's remote access to Napoli [Shkolnik]'s network entirely.  This issue persisted through January 2023.").

On November 4, 2022, Palmore sent the Firm a more detailed letter describing her claims. ¶ 197.  Within the hour, Palmore was unable to log on to the Firm's network from any of her devices, including her computer at the Long Island office.  ¶ 198.  Due to reoccurring issues in accessing the Firm's network, Palmore was spent hours talking to IT on multiple occasions in order to regain entry to the network, ¶ 200, and was "forced to work in-person daily" at the Firm's Long Island office.  ¶ 206.  On November 8, 2022, Palmore noticed she could not access Napoli Shkolnik's centralized online system for Human Resources, although she does not allege where she was when she discovered this issue.  ¶ 204.  On November 9, 2022, Marie and Paul Napoli arrived for an unannounced visit at the Long Island office, where Palmore had been working daily due to her internet technology issues.  ¶ 206.  Palmore confined herself to her office so as to not run into Paul Napoli.  ¶ 207.

In the meantime, beginning in November 2022, Palmore was excluded from Firm meetings and social events.  ¶ 217.  Specifically, she was not invited to two social events at Long Island restaurants that were planned by the Long Island office.  ¶¶ 215–217, 224–226.  Palmore was also removed from the email distribution lists for the Firm's personal injury department and the Firm's partners.  ¶¶ 196, 202.  Paul Napoli also subjected Palmore's work to intense scrutiny, emailing her requests for notes from her meetings — including meetings with prospective clients—and asking additional questions about her work.  ¶¶ 236–238.  Palmore understood these requests as insinuating she had not actually done the reported work and as challenging the integrity of her billing records. *Id*.  The parties' location during these email exchanges is also not specified in the complaint.

After Palmore's counsel informed the Firm that Palmore would be pursuing litigation, the Firm asked Palmore to engage in mediation.  ¶¶ 228–229.  A mediation session took place in New York City on January 12, 2023, which was unsuccessful. ¶ 231.  At the conclusion of the mediation session, Paul Napoli asked Palmore to refrain

from filing litigation against the Firm so that the parties could schedule another mediation.  ¶¶ 231–33; Doc. 56 at 2.  Palmore agreed to his request.  ¶ 235.

On February 13, 2023, Palmore alerted Human Resources that she was suffering from a serious medical condition and that she would need to take a week of medical leave.  ¶ 240.  Paul Napoli responded to her request, stating that Palmore was required to provide supporting medical documentation and accusing her of taking a "large number" of days off.  ¶¶ 241–43.  In the past, the Firm had not required Palmore to submit supporting medical documentation for medical leave.  ¶ 242.  Either party's location during this email exchange is not specified in the complaint.

The next day, February 14, 2023, Palmore received an email from the Firm's chief financial officer.  ¶ 247.  This email detailed that "the outstanding balance due to the [F]irm is $400,770.38" and included an attached "draw schedule."  *Id.*  Up until that date, Napoli Shkolnik had never asked Palmore to pay back any draw.  *Id.*  The Firm asserted that because Palmore did not pay back her draw through generated fees, she owed the Firm compensation.  ¶ 274.  Again, Palmore's location during this email exchange is not specified.

On February 23, 2023, the day before the scheduled second mediation, Napoli Shkolnik (but not the Individual Defendants) filed a lawsuit against Palmore in Nassau County[6] state court, alleging that she attempted to extort money from the Firm by making "false and defamatory claims of discrimination."  ¶¶ 251, 254; *see also* Doc. 55-2 (complaint in the state court action).  Palmore believes the lawsuit was filed against her in retaliation for her complaints of discrimination.  ¶ 2.

Finally, on February 26, 2023, the Firm fired Palmore over email.  ¶ 279.

---

[6] Nassau County is located in the Eastern District of New York.

### B.  Procedural Background

Palmore filed her complaint on February 27, 2023, alleging:  (1) race discrimination pursuant to § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (2) disability discrimination pursuant to the NYSHRL, and NYCHRL; (3) retaliation pursuant to § 1981, NYSHRL, and the NYCHRL; (4) unlawful interference with her rights, as well as retaliation, pursuant to the Family Medical Leave Act ("FMLA"); and (5) violation of the New York anti-SLAPP law in relation to Napoli Shkolnik's state court lawsuit against her.  Doc. 1. Defendants filed their motion to dismiss on July 19, 2023.  Doc. 47.  Defendants assert that Palmore's complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim.  *Id.*  In the alternative, they argue the case should be transferred to the Eastern District of New York.  *Id.*

On August 14, 2023, Palmore filed a declaration to supplement her factual allegations.  As relevant to the instant motion, the declaration states that Palmore worked from the Firm's New York City office "on numerous occasions oftentimes more than once a week."  Doc. 56 at 1.  While at the New York City Office, Palmore:  learned about Marie Napoli's reassignment of a female associate's case, as explained above; received the results from the anonymous employee survey; and attended the September 22, 2022 task force meeting.  *Id.* at 1–2.  Furthermore, Palmore states:

> "For reasons articulated in my Complaint, I was subjected to a dis-criminatory and retaliatory hostile work environment during my em-ployment at Napoli [Shkolnik]. The hostile work environment per-meated the entire workplace. Put another way, the hostile work environment existed whether I was in the [Long Island] office, the [New York City] office, at offsite conferences with the leaders of the [F]irm and even when I was with them in court proceedings and other matters."

*Id.* at 1.  Palmore also alleges she was in New York for the "sham mediation in which Napoli [Shkolnik] fraudulently begged me not to file a lawsuit in order to gain

time to file a pre-emptive retaliatory lawsuit against me." *Id.* at 2.  Finally, she states that many of the cases she worked on while employed at the Firm were litigated in New York, and that she "was often in [New York City] for appearances, depositions, client meetings, and the like." *Id.*  Finally, Palmore attests that her declaration is "not a complete recitation" of her work in New York City. *Id.* at 2.

The Court notes that notwithstanding the assertions in the declaration, Palmore stated in the complaint that she "work[ed] in-person daily" at the Firm's Melville office in Long Island.  ¶ 215.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiffs "opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction ha[ve] the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  Plaintiffs "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To meet this burden, a plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001).  The Court construes all of a plaintiff's allegations as true and resolves all doubts in a plaintiff's favor. *Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co*., 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).  "However, [a plaintiff] may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756 (LGS), 2014

WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted).  The Court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co*., 91-cv-3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd*., 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (internal citation omitted).

### B.  Rule 12(b)(3) Motion to Dismiss for Improper Venue

On a motion to dismiss for improper venue, a court generally accepts as true the factual allegations in the non-moving party's pleadings, and draws all reasonable inferences in favor of the party opposing the motion.  *See, e.g., Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)  "The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction."  *Casville Invs., Ltd. v. Kates*, 12-cv- 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).  "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Id.* (internal citation omitted).  To meet this burden, the plaintiff must plead facts sufficient for prima facie showing of jurisdiction or venue.  *Glasbrenner*, 417 F.3d at 355 (internal citation omitted).  Venue is proper in the chosen forum if:  (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought."  28 U.S.C. § 1391(b).

### C.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

III.     **DISCUSSION**

    **A.   The Court Has Personal Jurisdiction Over the Individual Defendants**

The Individual Defendants, who are domiciled in Puerto Rico, argue that they are not subject to personal jurisdiction in New York.  Doc. 48 at 16–18.  Courts evaluating personal jurisdiction over foreign defendants take a two-step approach.  First, the Court must determine if jurisdiction exists under the law of the forum state.  In this case, the Court must first determine whether personal jurisdiction is appropriate pursuant to New York State's long-arm jurisdiction statute, C.P.L.R. § 302(a).  Second, the Court will then evaluate whether the exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

    *1.  New York's Long-Arm Statute*

Palmore alleges that personal jurisdiction over the Individual Defendants[7] is proper under both C.P.L.R. § 302(a)(1) and § 302(a)(3).  Doc. 54 at 16–17.  Turning first to § 302(a)(1), this provision permits the exercise of specific jurisdiction over a nondomiciliary if the defendant "transacts any business within the state[.]" C.P.L.R § 302(a)(1).  Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal citations omitted).  Transacting business is defined as purposeful activity, meaning "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Best Van Lines*, 490 F.3d at 246.  "New York courts have held that a claim aris[es] from a particular transaction when there is some articulable nexus between [the]

---

[7] The parties do not contest that the Court has personal jurisdiction over Napoli Shkolnik, which has its principal place of business in New York City, which is within the Southern District of New York.  ¶ 17; *see also In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) ("A corporation is subject to the general personal jurisdiction of the courts in the states of its incorporation and its principal place of business.").

business transacted and the cause of action sued upon." *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal quotation marks omitted). Section 302(a)(1) is a "single act" statute, meaning "a single transaction of sufficient quality may invoke jurisdiction, provided that the transaction was purposeful, and the necessary relationship between the transaction and the claim asserted exists." *Id*. at 248. Additionally, when a defendant makes remote communications that "effectuate some purposeful business in New York," personal jurisdiction pursuant to § 302(a)(1) "will be found even if a defendant never actually entered the state." *Rich v. Fox News Network, LLC*, No. 18-cv-2223 (GBD), 2020 WL 6276026, at *3 (S.D.N.Y. Sept. 15, 2020) (citing *Pickett v. Migos Touring, Inc.,* 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019)).

Through their communications with Palmore, the Individual Defendants purposefully availed themselves of the privilege of conducting business in New York state.  Marie Napoli repeatedly emailed Palmore with promises to provide more marketing support, ¶ 64, 67, 51–77, and also wrote to Palmore about not becoming involved in particular settlement negotiations.  ¶ 78.  Paul Napoli and Shkolnik met with Palmore over a Microsoft Teams to discuss the quality of her work for the Firm.  ¶ 164.  Shkolnik further contacted Palmore about shooting a commercial for the Firm. ¶¶ 101–102.  Paul Napoli also repeatedly called Palmore to set up meetings with her in relation to her employment at Napoli Shkolnik.  ¶¶ 137, 148, 175.  These activities, undertaken by law firm partners in relation to their attorney employee located in New York, effectuate some purposeful business in the state, even if they were done remotely.  *See Rich*, 2020 WL 6276026 at *3.  Next, Palmore's causes of action have an "articulable nexus" with that transaction of business, *Solé Resort*, 450 F.3d 100, because they all stem from actions that allegedly occurred during her employment at Napoli Shkolnik.[8]

---

[8] This includes Palmore's anti-SLAPP claim because it responds to the firm's filing of a lawsuit against Palmore.  The Complaint alleges that the firm's lawsuit was a form "harassment and retaliation."  ¶ 251. Accepting this statement as true and resolving any doubts in Palmore's favor, *Casville Invs., Ltd*, 2013 WL

Defendants respond that corporate officers, such as the Individual Defendants,[9] are not subject to personal jurisdiction based on the Firm's transaction of business unless the activity was performed "for their benefit" or with their "knowledge and consent." Doc. 48 at 17. To Defendants' point, under New York law, a general allegation that an officer controls a corporation is insufficient, by itself, to establish personal jurisdiction. *See Pilates, Inc. v. Current Concepts*, No. 96-cv-0043, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996). Instead, assuming the corporation has sufficient in-state contacts to establish personal jurisdiction (which the parties here do not dispute), the corporate officer must "play a part in the [corporate] activities that give rise to the action" to also be subject to personal jurisdiction. *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019). Palmore's allegations meet this test, since they plausibly demonstrate how the Individual Defendants' played a part in the conduct giving rise to her claims. Specifically, Palmore alleges that Paul Napoli referred to her as the "Black female Ben Crump," ¶ 90, ignored or rebuffed her requests for marketing to communities of color, ¶¶ 51–77, told Palmore, the only person of color in the group, to just "be quiet and don't say anything," ¶ 99, and repeatedly yelled or belittled her, ¶¶ 139, 148, and admonished her work product, ¶ 164. Likewise, Palmore alleges that Marie Napoli also ignored her requests for marketing to communities of color, ¶¶ 64, 51–77, and "acquiescence[d] in discriminatory conduct" regarding the reassignment of a female associate's case. Doc. 54 at 35; ¶ 127–29. Finally, Palmore alleges Shkolnik replaced her commercial with one using white actors, ¶¶ 101–102, ignored her requests for marketing, ¶¶ 56–57, and also admonished Palmore for problems with her work, ¶ 164.

---

3465816 at *3, the Court finds that Palmore's anti-SLAPP claim has an articulable nexus to the actions that occurred during the course of her employment.

[9] Defendants characterize the Individual Defendants as corporate officers in their memorandum of law. *See* Doc. 48 at 17.

Accordingly, the Court finds that personal jurisdiction over the Individual Defendants is proper pursuant to § 302(a)(1).

Because the Court ultimately finds jurisdiction under § 302(a)(1), the Court need not address the alternate bases alleged for personal jurisdiction pursuant to § 302(a)(3).[10] *See, e.g.*, *Pearson Educ., Inc. v. ABC Books, LLC*, No. 19-cv-7642 (RA), 2020 WL 3547217, at *6 (S.D.N.Y. June 30, 2020) ("Because the Court concludes that personal jurisdiction is proper under § 302(a)(1), it need not determine whether it would also be proper under § 302(a)(3).").

2. *Due Process*

The Second Circuit has observed that, although personal jurisdiction could theoretically be permitted under § 302(a)(1) but prohibited under due process, the court "would expect such cases to be rare." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, . . . the assertion of specific jurisdiction would somehow . . . offend traditional notions of fair play and substantial justice."). Indeed, the Second Circuit noted it could identify no such cases in the Circuit. *Id.* This case is not an exception, especially given that the Defendants do not contest personal jurisdiction on the basis of constitutional due process.

Accordingly, the Court's exercise of personal jurisdiction over the Individual Defendants is both statutorily and constitutionally lawful.

---

[10] Section 302(a)(3) provides for personal jurisdiction if the non-domiciliary "commits a tortious act [outside] the state causing injury to person or property within the state if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" C.P.L.R § 302(a)(3).

**B.  Venue is Improper in the Southern District of New York**

To establish venue in this District, Palmore relies on U.S.C. § 1391(b)(1) and (2). ¶ 12.  Section 1391(b) states that venue is proper in the chosen forum if:  (1) least one defendant resides in the district and all the defendants reside in the same state in which the district is located, (2) a "substantial part" of the events giving rise to the claim occurred in the district.  28 U.S.C. § 1391(b).  Section 1391(b)(1) does not apply here because the Individual Defendants all live in Puerto Rico.  Doc. 48 at 16.

Section 1391(b)(2) allows for "venue in multiple judicial districts as long as a 'substantial part' of the underlying events took place in those districts*."  Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir.2005).  The Second Circuit has instructed district courts to "take seriously the adjective 'substantial'" and to construe the venue statute "strictly."  *Id*. at 357.

Courts in this Circuit use a two-part test to analyze whether venue is appropriate pursuant to § 1391(b)(2).  *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 432 (2d Cir. 2005).  First, the court must "identify the nature of the claim and the acts or omissions" that allegedly give rise to a plaintiff's claims.  *Id.*  During the first step, the Court's inquiry is focused on "where the defendant's actions or omissions occurred." *Prospect Capital Corp. v. Bender*, No. 09-cv-826 (HB), 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009); *see also Daniel*, 428 F.3d at 432 (explaining that "[i]n most instances, the purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.") (internal citations omitted).  Second, the court must "determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed."  *Daniel*, 428 F.3d at 432.

When deciding a motion to dismiss for improper venue, the "court may examine facts outside the complaint to determine whether venue is proper.  The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *E.P.A. ex rel. McKeown v. Port Authority*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).

*1. Venue Over the Individual Defendants*

As to the first step of the test, the "nature of the claim[s]" Palmore brings is clear: she alleges discriminatory and retaliatory conduct by the Individual Defendants that occurred during the course of her employment.  In particular, Palmore alleges that the Individual Defendants harassed, fired, and filed a retaliatory lawsuit against her.  Doc. 54 at 17.  However, where these acts occurred, as also required under the first step of the analysis, is not sufficiently alleged in the complaint.  *See Prospect Capital Corp.*, 2009 WL 4907121, at *3.  "Communications transmitted to the district where the suit is filed" can satisfy the Section 1391(a)(2) standard, assuming those communications "sufficiently relate to the cause of action."  *Smart Shoppers NY LLC v. Tylers Coffee LLC*, No. 22-cv-4969 (NSR), 2024 WL 113731, at *8 (S.D.N.Y. Jan. 10, 2024).  But here, Palmore's allegations fail to show *any* communications by the Individual Defendants that were transmitted into the Southern District.  While Palmore alleges that the Individual Defendants sent emails, made telephone calls, or arranged remote meetings, and that these events relate to her discrimination and retaliation claims, she does not ever explain whether she was in the Southern District of New York while these events occurred.  ¶¶ 64, 139, 148, 164–65.  Accordingly, the Court has insufficient information about whether the Individual Defendants' acts or omissions occurred in this District, which is Palmore's burden to carry.  *Glasbrenner*, 417 F.3d at 355 (internal citation omitted).  Venue in the Southern District of New York is therefore improper as to the Individual Defendants.

*2. Venue over Napoli Shkolnik* [11]

Under the first step, Palmore alleges conduct by the Firm that occurred in the Southern District of New York.  In particular, Palmore alleges that she worked from the New York City office "numerous" times, often more than once a week, and that a

---

[11] While Palmore does not separate the factual allegations in her venue argument, it is "well established that a plaintiff must establish proper venue for each defendant."  *Berall v. Teleflex Med. Inc*., No. 10-cv-5777 (LAP), 2022 WL 2666070, at *3 (S.D.N.Y. July 11, 2022).  Accordingly, the Court analyzes the factual allegations in Palmore's declaration, Doc. 56, which are not attributed to any of the Individual Defendants, as arguments supporting venue in this District over the Firm.

discriminatory and retaliatory hostile work environment existed "whether [she] was at the [Long Island] office or the [New York City] office. Doc. 56 at 1. Second, Palmore alleges that while at the New York City office, she learned about another female attorney's reassignment due to a client's preference for male lawyers. ¶¶ 127–29; Doc. 56 at 1. Third, she alleges that she received a survey with an anonymous complaint from another employee about the Firm's conduct while in the New York City office. Fourth, Palmore alleges that she attended a task force meeting at the New York City office where Gloria Werle expressed her own opinion that as a Hispanic woman, she had never experienced discrimination at the Firm. ¶¶ 130, 134; Doc. 56 at 1. Finally, she alleges that she attended the January 12, 2023 mediation session in New York City. ¶¶ 125; 231–33. Doc. 56 at 2.[12] These allegations are sufficient to show acts that occurred in this District, based on the Firm's conduct, that give rise to Palmore's discrimination and retaliation claims. *See Prospect Capital Corp.*, 2009 WL 4907121 at *3; *Daniel*, 428 F.3d at 432.

However, under the second prong of the test, Palmore has not alleged an action that took place in the Southern District of New York that is substantially related to her claims. It is uncontested that Palmore resides in Long Island—which is located in the Eastern District of New York—and that she occasionally worked for the Firm remotely or from the Firm's Long Island office. *See* Doc. 1 at ¶¶ 16, 207, 224–226. Palmore's only basis for venue in this District is due to Napoli Shkolnik's other office location in Manhattan. Palmore asserts she "regularly" worked from Napoli Shkolnik's New York City office, often at least once a week, attended court appearances and took legal meetings in New York, and alleges that the hostile work environment "permeated the

---

[12] These allegations are included in a declaration Palmore submitted providing new factual allegations to support her argument that venue is proper in this District. Doc. 56. Defendants assert that the Court cannot consider the declaration because it is outside of pleadings. Doc. 57 at 1–2. The Court disagrees. On a 12(b)(3) motion to dismiss for improper venue, the Court can rely on materials beyond the pleadings. *See Darby Trading*, 568 F. Supp. 2d at 334. Accordingly, the Court will consider Palmore's declaration in its venue analysis.

entire workplace." Doc. 56 at 1. But Palmore does not allege that specific actions or omissions that gave rise to her claims occurred while she was working in this District, as required for venue to be proper. *See Daniel*, 428 F.3d at 432. Nor does Palmore cite any cases establishing venue under a theory of a "permeating" hostile work environment claim over several venues.

And while Palmore does point to specific actions that occurred in this District in her declaration, these actions do not form a substantial part of her claims. Palmore's claims are based on the Defendants' alleged discrimination and retaliation directed *against her* during the course of her employment. However, the acts that she specifically alleges occurred in the New York City office were not directed against her. For example, Werle's subjective statement about her personal experience with discrimination, an alleged act of gender discrimination[13] against a female associate, and receiving the anonymous employee survey, are not, construed "strictly," acts that form a substantial part of Palmore's claims. *Gulf Ins. Co.* at 357; *see also Fedele v. Harris*, 18 F. Supp. 3d 309, 317 (E.D.N.Y. 2014) ("Only the events that directly give rise to a claim are relevant[.]") (internal quotation marks and citations omitted). Nor does Palmore's attendance at the allegedly sham mediation session meet this bar, since the retaliatory action (the filing of the lawsuit), was, as both parties concede, in the Eastern District of New York. Because the second prong of the test is not satisfied, Palmore has not carried her burden to establish venue over Napoli Shkolnik.

Accordingly, the Court finds that venue is not proper in the Southern District of New York as to either the Individual Defendants or to the Firm.

### C. Transfer to the Eastern District of New York is Warranted

When, as here, the district court is not the proper venue for an action, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or

---

[13] Indeed, notwithstanding the fact the alleged gender discrimination was not directed at Palmore, the Court also notes that Palmore does not allege gender discrimination as one of her claims.

division in which it could have been brought."  28 U.S.C. § 1406(a).  To effectuate a transfer, a determination must be made that the receiving court must be a proper venue and must possess personal jurisdiction over the defendants.  *Gibbons v. Fronton*, 661 F. Supp. 2d 429, 434 (S.D.N.Y. 2009) (holding that § 1406(a) only permits transfer to a forum in which venue is proper and the defendants are subject to personal jurisdiction).  "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).  The purpose of § 1406(a) is to "avoid[ ] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."  *Spar, Inc. v. Info. Res., Inc*., 956 F.2d 392, 394 (2d Cir. 1992) (internal quotation marks and citations omitted).

Defendants' bear the burden of establishing that the Eastern District of New York is the proper venue and has personal jurisdiction over them.  *See Alexander & Alexander, Inc. v. Donald F. Muldoon & Co*., 685 F. Supp. 346, 350 (S.D.N.Y. 1988) ("The proponents of the transfer motions . . . bear the burden of establishing that personal jurisdiction and venue are proper [in the transferee forum].")  Palmore resides in Long Island, which is in the Eastern District of New York, and worked at the Firm's Long Island office on a daily basis.  ¶¶ 16, 215.  Accordingly, a substantial part of the events giving rise to Palmore's discrimination and retaliation claims against the Firm took place in the Eastern District of New York; thus, venue is proper there.  *See* 28 U.S.C. § 1391(b)(2).  Moreover, Defendants themselves request the transfer, Doc. 48 at 19, and therefore consent to the exercise of personal jurisdiction in the Eastern District.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Personal jurisdiction, unlike subject-matter jurisdiction, can, however, be purposely waived").  By requesting the transfer, Defendants also waive objections to venue in the Eastern District

of New York.  *See In re Terrestar Corp.*, No. 16-cv-1421 (ER), 2017 WL 1040448, at *6 (S.D.N.Y. Mar. 16, 2017) ("[O]bjections to venue can be waived.").

The Court next considers whether it is in the interest of justice to transfer the case to the Eastern District of New York.  In this analysis, the court weighs "the equities of dismissing a claim when it could be transferred."  *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009) (internal citations and quotations omitted).  It is also in the interest of justice for plaintiffs to have their suits adjudicated on the merits.  *See Gibbons*, 661 F. Supp. 2d at 435.  However, the Second Circuit has held that a transfer should not be granted when it would "reward plaintiffs for their lack of diligence in choosing a proper forum" and allow them to "bargain hunt" forums after they commenced the action.  *Spar*, 956 F.2d at 394–95 (2d Cir. 1992).  While dismissal would require Palmore to file a new action in the Eastern District of New York (and pay the associated fees), "transfer will allow this action to proceed in that forum and lead to [an] adjudication on the merits."  *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 533 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).  Nor does the record indicate that Palmore filed this action in bad faith.  *Cf. Spar*, 956 F.2d at 394–95.  Accordingly, the Court finds that transferring this case to the Eastern District of New York is in the interest of justice.  Defendants' motion to transfer the case pursuant to § 1406(a) is therefore granted.[14]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, or in the alternative, to transfer, is GRANTED IN PART in that it is hereby ordered that this action is transferred to the Eastern District of New York for all further proceedings.  This opinion does not reach and should not be construed as expressing any point of view

---

[14] Palmore argues that her choice of venue is permissible and should be afforded substantial weight.  Doc. 54 at 38.  However, a plaintiff's choice of venue "is due little or no deference" when "the venue of plaintiff's choosing is improper."  *Catlin Indem. Co. v. New England L./Bos.*, No. 15-cv-4836 (JMF), 2016 WL 447849, at *4 (S.D.N.Y. Feb. 4, 2016) (citing Fed. R. Civ. P. 12(b)(3)).

concerning the sufficiency of the Firm's claims pursuant to Federal Rule of Civil

Procedure Rule 12(b)(6), which will be addressed by the transferee court.

      The Clerk of the Court is respectfully directed to transfer this case to the Eastern

District of New York and to terminate the motion, Doc. 47.

It is SO ORDERED.

Dated:    March 28, 2024
           New York, New York

_____
      EDGARDO RAMOS, U.S.D.J.